# FILED

AUG 2 0 2013

Clerk, U.S District Court
District Of Montana
Missoula



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LENCE FAMILY TRUST,<br><br>       Plaintiff,<br><br>   vs.<br><br>ELMER C. CHRISTENSEN;<br>LANDTECH ENTERPRISES LTD,<br>CO. and LANDTECH ENTERPRISES<br>LLC, Montana Limited Liability<br>Companies; JOANNE<br>CHRISTENSEN; LANDTECH<br>CORPORATION, a Montana<br>Corporation; and JOHN DOES 1-10,<br><br>       Defendants. | CV 12–171–M–DWM<br><br><br>ORDER |

## INTRODUCTION

This is a Joint Motion for Summary Judgment. (Doc. 22; Doc. 34.)

Defendants Elmer Christensen, Joanne Christensen, Landtech Corp., and Landtech

Ltd. are seeking summary judgment pursuant to Federal Rule of Civil Procedure

56(a) on Plaintiff Lence Family Trust's Second Amended Complaint. (Doc. 5.)

Defendant Landtech LLC has filed its own Motion for Summary Judgment. (Doc.

34.) Landtech LLC asserts the same defenses that the other Landtech companies assert, so this Order is organized by claim and not by company.

## BACKGROUND

Landtech Corporation ("Landtech Corp."), incorporated in Montana in 1980, was involved in oil and gas field services and salt water disposal. (Doc. 24–1 at 2.) Landtech Corp.'s principal place of business was Sidney, Montana. (Doc. 5 at 2.) From 1983 until 2005, the President of Landtech Corp. was Elmer C. Christensen. (Doc. 24–1 at 2–3.) From 1981 until August of 2005, John Lence was the attorney for Landtech Corp. (Doc. 32–4 at 2.) Lence also had an equity interest in Landtech Corp. of between 25% and 50% during the same period. (Doc. 32–2 at 2.) Mr. Christensen and Landtech Corp. paid Lence a $2,500 monthly retainer, later raised to $5,000, for his legal services. (Doc. 32–4 at 2.) Lence is the senior trustee of the Lence Family Trust, a Texas trust and the Plaintiff in this action. (Doc. 32–4 at 1.) Landtech Corp. was involuntarily dissolved by the Montana Secretary of State on December 4, 2006. (Doc. 24–1 at 3.)

Landtech Enterprises LTD Co. ("Landtech Ltd.") was a limited liability company incorporated in Montana on September 21, 1998, (doc. 24–1 at 3), with its principal place of business in Sidney, Montana, (doc. 5 at 2). It too was

2

involved in oil and gas field services and salt water disposal. (Doc. 24–1 at 3.) The initial members of Landtech Ltd. were Elmer C. Christensen and Gary L. Wygal. Each man had a 50% capital percentage and a 50% voting percentage in Landtech Ltd. (Doc. 24–1 at 3.) From 1999–2006, both Elmer and his wife Joanne Christensen were individual members of Landtech Ltd. (Doc. 24–1 at 4.) On December 4, 2007, Landtech Ltd. was involuntarily dissolved by the Montana Secretary of State.[1] (Doc. 24–1 at 4.)

On December 31, 2004, Landtech Ltd.'s assets were sold to a North Dakota company. (Doc. 36 at 2.) As part of the agreement, the buyer was allowed to use the name "Landtech" in a new entity. (Doc. 36 at 2.) On June 21, 2005, this new entity organized as a single member limited liability company, Landtech Enterprises, LLC ("Landtech LLC"). (Doc. 36 at 2.) Company assets were transferred between Landtech Ltd. and Landtech LLC from December 31, 2004 to July 27, 2005. (Doc. 24 at 5.) The sale totaled $3,600,000 and resulted in a net profit for Landtech Ltd. of over $2,500,000. (Doc. 32 at 5.) Landtech LLC is owned by Badlands Power Fuels; Elmer Christensen has never had an ownership interest in Landtech LLC. (Doc. 36 at 4.) Even though Landtech LLC is a North

---

[1] It is not clear from the record why Landtech Corp. and Landtech Ltd. were involuntarily dissolved.

3

Dakota corporation, it is registered to do business in Montana and has an office in Sidney. (Doc. 36 at 2, 6.)

This case stems from an Acknowledgement and Assignment signed by Landtech Ltd., the Lence Family Trust, and John Lence's attorney, James Bartlett, on March 8, 2004. (Doc. 24 at 5.) The parties agreed that if Landtech Ltd. or its assets were sold, the net proceeds would be shared equally: 50% to Elmer and Joanne Christensen and 50% to the Lence Family Trust. (Doc. 24 at 5.) Over the course of correspondence, Christensen represented to Lence that Christensen was in very poor health, that he was unable to manage the company, and that the company would have to be sold for far less than it was worth. (Doc. 5 at 3.) The business sold in December 2004 to Landtech LLC; the Lence Family Trust was not notified of the sale or given its 50% share. (Doc. 33 at 6.) On August 11, 2005, Gary Jackson, a lawyer representing Landtech Ltd., sent a letter to Lence and Attorney Bartlett. (Doc. 24 at 6.) The letter offered $100,000 as consideration for and in full satisfaction of the Acknowledgement and Assignment. Also included was a document that, when signed by Lence, would release Elmer and Joanne Christensen and Landtech Ltd. of all past and future claims, including claims arising out of the Acknowledgement and Assignment. (Doc. 24–15 at 1.) Bartlett answered Jackson four days later, asking for copies of the closing documents so

that Lence could make an informed decision on the $100,000 offer. (Doc. 24 at 6.)

Two days later, Jackson told Bartlett on the phone that Lence did not own an

interest in Landtech Ltd. and, as a result, he would not receive copies of the

closing documents. (Doc. 24 at 6.) Lence signed the Release of All Claims that

same day. (Doc. 24 at 7.) On August 22, 2005, Bartlett sent Jackson the signed

release along with a letter explaining why Lence signed it: he was in dire financial

straits and needed the money for his family and attorney. (Doc. 24 at 7.) On

August 25, 2005, Jackson sent Bartlett a check for $100,000. The check was

deposited and the amount was never returned to Christensen. (Doc. 24 at 10.)

Janet Hagel is Lence's secretary; she has had his general power of attorney

since April 7, 2004. (Doc. 24 at 6.) On September 9, 2005, Hagel signed a Notice

of Rescission on behalf of Lence and the Lence Family Trust. (Doc. 24 at 11.) The

Notice stated that Lence and the Lence Family Trust rescind the Release of Claims

in favor of Landtech Ltd. and Elmer and Joanne Christensen. (Doc. 24 at 11.) The

Notice also requested that Christensen make a reasonable offer to settle payment

of the one-half share owed to the Lence Family Trust if he wanted to avoid a

lawsuit. (Doc. 24 at 11.) Christensen maintained that he "did not owe John any

money." (Doc. 24 at 7.) Seven years passed. In 2012, Lence tried to look up Elmer

Christensen to determine whether he had passed away. More than a dozen Bakken

trade journals and the *Sidney Herald* contained ads for Landtech LLC. All the ads listed Christensen as the manager of operations. (Doc. 41 at 3.) Upon receipt of this information, Lence concluded that he had in fact been defrauded by Mr. Christensen. (Doc. 42 at 2–3.) He filed suit on behalf of the Lence Family Trust on October 5, 2012, for breach of contract, fraud, civil conspiracy, and constructive fraud. (Doc. 1.)

**STANDARD**

Summary judgment is granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Rule 56(c) requires a party asserting there is an [sic] genuine factual dispute to show evidence, not mere allegations. In resolving whether a genuine issue exists, the Court 'view[s] the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party.'" *Roaring Lion, LLC v. Nautilus Ins. Co.*, 2011 WL 3955800, at *1 (D. Mont. Sept. 7, 2011) (quoting *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008)) (Molloy, J.). "On a motion for summary judgment, this Court must determine whether a fair-minded jury could return a verdict for the non-moving party. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment; factual disputes

which are irrelevant or unnecessary to the outcome are not considered." *Rice v. Allstate Ins. Co.*, 2012 WL 1831114, at *1 (D. Mont. May 18, 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 248 (1986)) (Molloy, J.). A district court's decision to grant, *see Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011), partially grant, *see White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007), or deny, *see Tibbetts v. Kulongoski*, 567 F.3d 529, 535 (9th Cir. 2009), a summary judgment motion is reviewed de novo.

### SUMMARY CONCLUSIONS

Defendants are entitled to summary judgment on all claims: breach of contract, fraud, civil conspiracy, and constructive fraud. The briefs in support of the Motions for summary judgment raise similar defenses to the Complaint, consequently all Defendants are entitled to summary judgment for the same reasons as explained below.

### ANALYSIS

**I.     An accord and satisfaction bars the Plaintiff from asserting its breach of contract claim.**

**A.     Only Defendant Mr. Christensen and Defendant Landtech Ltd. can be held liable for breach of contract.**

In its Second Amended Complaint, the Plaintiff asserts a breach of contract claim against "Defendants." The Complaint alleges that "Defendants breached the

contract by failing to perform and pay plaintiff as agreed." (Doc. 5 at 4.) The

language of the Complaint implies that the breach of contract claim is being

asserted against all Defendants. However, only Defendant Mr. Christensen and

Defendant Landtech Ltd. were parties to the contract that allegedly was breached.

(Doc. 5 at 3.) "Generally, the obligation of contracts is limited to the parties

making them, and, ordinarily, only those who are parties to contracts are liable for

their breach. Parties to a contract cannot thereby impose any liability on one who,

under its terms, is a stranger to the contract." 17A Am. Jur. 2d *Contracts* § 412

(2013). The Montana Supreme Court concluded that "the obligation of the

contracts is limited to the contracting parties." *Gambles v. Perdue*, 572 P.2d 1241,

1243 (Mont. 1977). Neither Christensen nor Landtech Corp. nor Landtech LLC

was a party to the Acknowledgement and Assignment of March 8, 2004. (Doc. 5 at

3.) Lence Family Trust has no legal basis for their claim of breach of contract

against Mrs. Christensen, Landtech Corp. or Landtech LLC. These three

Defendants are entitled to summary judgment on the breach of contract claim as a

matter of law.

**B.     The Release of Claims is a valid accord and satisfaction.**

The Acknowledgement and Assignment signed by Christensen, Landtech

Ltd., and the Lence Family Trust required that the net proceeds of a sale of

8

Landtech Ltd. were to be shared equally by the Christensens and the Lence Family

Trust. (Doc. 24–7.) When Landtech Ltd. was sold, the Lence Family Trust was not

notified and did not receive its 50% share of the proceeds. (Doc. 5 at 3.) Plaintiff

claims that Defendants' failure to share the proceeds constitutes a breach of their

contract. (Doc. 5 at 4.)

However, Defendants insist that a valid accord and satisfaction releases

them from any obligations under the original contract. (Doc. 11 at 3.) Shortly after

the sale of Landtech Ltd. was complete, Landtech Ltd.'s attorney, Gary Jackson,

offered Lence $100,000 to sign a Release of All Claims. (Doc. 24 at 6.) The

Release stated, in relevant part,

> John A. Lence as Trustee of the Lence Family Trust . . . and
> James C. Bartlett . . . do hereby completely, finally, and
> irrevocably release, acquit and forever discharge Landtech
> Enterprises LTD. CO. . . . Elmer C. Christensen, and Joanne M.
> Christensen . . . from any and all collections, claims, actions,
> causes of action, demands, punitive damages, other damages,
> expenses and compensations whatsoever which the
> undersigned may now have or which may hereafter accrue on
> account of or in any way growing out of any and all matters
> which in any manner relate to Landtech Enterprises Ltd. Co.
> including, but not limited to, the Acknowledgment and
> Assignment dated March 8, 2004 . . . whether known or
> unknown at this time and any foreseen and unforeseen
> consequences thereof. The undersigned in consideration of the
> sum of One Hundred Thousand and No/100 Dollars
> ($100,000.00) hereby acknowledge full satisfaction of any and
> all claims they may have against Landtech Enterprises Ltd. Co.,

Elmer C. Christensen and JoAnne M. Christensen arising out of
any and all matters relating to Landtech Enterprises Ltd. Co.
and the aforementioned Acknowledgment and Assignment. The
undersigned acknowledge that the receipt of the sum referenced
above constitutes the entire sum to be paid in exchange for the
release of the claims released herein and that it is their intent to
fully and completely settle all of the claims released hereby
upon delivery of the settlement sum to them.

(Doc. 24–15 at 1.) Lence signed the release and deposited the $100,000 check.

(Doc. 24 at 7, 10). The question is whether that $100,000, in exchange for a

Release of All Claims, is a valid accord and satisfaction that extinguishes all prior

contractual obligations. (Doc. 23 at 7.)

   "An accord is an agreement to accept in extinction of an obligation

something different from or less than that to which the person agreeing to accept is

entitled. Though the parties to an accord are bound to execute it, yet it does not

extinguish the obligation until it is fully executed." Mont. Code Ann.

§ 28–1–1401. "Acceptance by the creditor of the consideration of an accord

extinguishes the obligation and is called satisfaction." Mont. Code Ann.

§ 28–1–1402. Here, Lence (the creditor) agreed to take something less than that to

which he was arguably entitled and the Defendants fully executed their new

obligation: to pay him $100,000. The Release of All Claims is an accord and the

$100,000 check Lence took in consideration is a satisfaction. Notably, "the

10

Montana Supreme Court defines a 'release' as 'nothing more than an accord and satisfaction, or, one of several ways in which an obligation, contractually, may be discharged or "settled" for less than or for something different than what is owed.'" *Greenwald v. Safeco Ins. Co. of Am.*, 2010 WL 2978140, at *5 (quoting *Watters v. Guaranty Natl. Ins. Co.*, 3 P.3d 626, 634 (Mont. 2000)) (Molloy, J.). The doctrine of accord and satisfaction prevents Lence from enforcing a breach of contract claim against Christensen and Landtech Ltd.

Nonetheless, Janet Hagel, acting on behalf of Lence, attempted to rescind the Release of All Claims by sending the Defendants a Notice of Recession. (Doc. 24–19.) The Notice advises Defendants that the Acknowledgement and Assignment of March 8, 2004 "is a binding a legal agreement and good faith full compliance with its terms is expected." (Doc. 24–19 at 1.) A party to a contract may rescind the contract only "(1) if the consent of the party . . . was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom the party rescinds." Mont. Code Ann. § 28–2–1711(1). Lence claims that his consent to the Release of All Claims was obtained through undue influence. (Doc. 33 at 5.) Undue influence consists of: "taking a grossly oppressive and unfair advantage of another person's necessities or distress." Mont. Code Ann. § 28–2–407(3). The Montana Supreme

Court sets a high standard for claiming undue influence: "For there to be undue influence it is necessary that there be a destruction of free agency." *In re Baby M*, 921 P.2d 857, 860 (Mont. 1996). Although Christensen knew of Lence's difficult financial situation, (doc. 32–4 at 3), there is no evidence that he used this knowledge in a grossly oppressive manner or to destroy Lence's free agency and thereby convince him to sign the Release of All Claims. Lence cannot meet the standard for a showing of undue influence, so he cannot rescind the Release of All Claims on that basis. The Release of All Claims and payment is a valid accord and satisfaction that discharges the Defendants' prior contractual obligations. Defendant's Motion for Summary Judgment on the breach of contract claim is granted.

## II. The statute of limitations on fraud was not tolled and now bars the Plaintiff's claim.

The Lence Family Trust argues that the representations Christensen made about his poor health, the value of Landtech Ltd., and the need to sell the company were fraudulent because Christensen knew what he was saying was false but made the representations anyway, hoping to convince Lence to take $100,000 instead of the half-share of the profits that was his due. (Doc. 5 at 4.) Defendants deny the

accusations of fraud but claim that regardless the statute of limitations bars the
Plaintiff's claim. (Doc. 23 at 3–4.)

## A.    The statute of limitations bars the fraud claim.

"A defendant is guilty of actual fraud if the defendant: (a) makes a
representation with knowledge of its falsity; or (b) conceals a material fact with
the purpose of depriving the plaintiff of property or legal rights or otherwise
causing injury." Mont. Code Ann § 21–1–221(3). But "[a]ctual fraud exists only
when the plaintiff has a right to rely upon the representation of the defendant and
suffers injury as a result of that reliance." Mont. Code Ann § 21–1–221(4). Fraud
is its own cause of action and, accordingly, has its own statute of limitations. A
cause of action for fraud must be commenced within two years, but the cause of
action does not accrue until "the discovery by the aggrieved party of the facts
constituting fraud." Mont. Code Ann § 27–2–203. "A claim or cause of action
accrues when all elements of the claim or cause of action exist or have occurred,
the right to maintain an action on the claim or cause is complete, and a court . . . is
authorized to accept jurisdiction of the action." Mont. Code Ann
§ 27–2–102(1)(a). The Montana Supreme Court holds "that the statute of
limitations for an action based on fraud begins when the fraud occurs unless the
facts which form the basis for the allegation are, by their nature, concealed. [It]

13

also conclude[d] that even after acts which form the basis for an allegation of fraud are discovered, the statute may be tolled if the defendant takes affirmative action to prevent the injured party from discovering that he or she has been injured." *Cartwright v. Eq. Life Assurance Socy. of U.S.*, 914 P.2d 976, 985 (Mont. 1996). The party asserting fraud "must show that the acts of fraud were committed under such circumstances that [it] would not be presumed to have knowledge of them, it being the rule that if [it] has 'notice or information of circumstances which would put [it] on inquiry which if followed would lead to knowledge, or that the facts were presumptively within [its] knowledge, [it] will be deemed to have actual knowledge of the facts.'" *Id.* (quoting *Mobley v. Hall*, 657 P.2d 604, 607 (Mont. 1983).

The acts of the Defendants that constitute fraud, according to the Plaintiff, took place during 2004 when Christensen made false representations about his health and the need to sell the company, (doc. 5 at 3); in December 2004 when Landtech. Ltd. was sold and the Lence Family Trust was not notified or given its 50% share, (doc. 33 at 6); and in August 2005 when Attorney Jackson offered Lence $100,000 as consideration for a Release of All Claims but refused Lence access to the closing documents, (doc. 24 at 6). Lence signed off anyway. The

September 9, 2005 Notice of Recession informed Christensen that "[a]bsent receipt of [a reasonable offer to settle payment of the Lence one-half share] a lawsuit will be filed against Landtech, you and your wife for fraud . . . ." (Doc. 24 at 11.) Accompanying the Notice was a handwritten letter from Mr. Lence to Mr. Christensen: "SHAME ON YOU. I THOUGHT OF YOU LIKE A BROTHER ALL OF THESE YEARS. SHAME ON YOU, ELMER." (Doc. 24 at 11.) The Notice and the letter that accompanied it shows that Lence knew or suspected by September of 2005 that he had been defrauded by Christensen. Defendants argue that the statute of limitations on the fraud claim has run, but they do not specify a date on which the fraud claim allegedly accrued. (Doc. 23 at 6; Doc. 37 at 7–8.) This lack of specificity matters little, however, because at least seven years passed between the events giving rise to the fraud claim and the filing of the lawsuit on October 5, 2012. (Doc. 1.)

Lence argues that he did not learn of the falsity of Mr. Christensen's representations about his health until 2012, (doc. 33 at 4). Nothing in the record shows why Lence waited seven years to investigate these claims or why he failed to exercise due diligence in investigating them. He also argues that the statute should be tolled because "the defendant was in a position of trust or confidence with the plaintiff." (Doc. 33 at 3.) The case Plaintiff cites for this proposition,

15

*Skierka v. Skierka Brothers, Inc.*, requires that "there must be some active affirmative concealment of the fraud . . . in order to postpone the running of the statute . . . [u]nless there is some relation of trust or confidence between the parties which imposes upon a defendant the duty of making a full disclosure of the facts." 629 P.2d 214, 217 (Mont. 1981). Christensen and Lence were friends and business partners for over twenty-five years. (Doc. 33 at 3). If Christensen had a duty to disclose all of the facts to Lence is irrelevant because Lence allegedly learned of the fraud on his own. He rescinded the Release of All Claims, demanded his half-share, and threatened a lawsuit for fraud on September 9, 2005. (Doc. 24–19 at 1–2.) Lence's actions indicate that he knew of facts and circumstances giving rise to Christensen's fraud before he discovered that Christensen had prevaricated about his health and even though Christensen may have failed to make a full disclosure of the facts surrounding the sale of Landtech Ltd. There is no circumstance in this case that would have tolled the statute of limitations. Thus the Plaintiff's claim is barred and Defendants' Motions for Summary Judgment on the fraud claim is granted.

### III. The Plaintiff does not have a colorable civil conspiracy claim and the claim is barred by the statute of limitations.

The third claim in the Complaint is for civil conspiracy. Plaintiffs allege that Christensen, Landtech Corp., Landtech Ltd., and Landtech LLC "agreed by words and conduct to accomplish the unlawful goal of cheating [the Lence Family Trust] of its share of the proceeds of the sale of the companies through the unlawful means of defrauding [the Lence Family Trust] with misrepresentations regarding the business and [Mr. Christensen's health." (Doc. 5 at 5.) In Montana,

> "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means. . . . The essential elements required to establish a civil conspiracy are the same as those required to establish a criminal conspiracy. In general, to constitute a civil conspiracy there must be: (1) Two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." . . . If the object of an alleged "conspiracy" is lawful, and the means used to attain that object are lawful, there can be no civil action for conspiracy. The foregoing is true even though damage may result to the plaintiffs and even though defendants may have acted with a malicious motive. If such were not the rule, obviously many purely business dealings would give rise to an action in tort on behalf of one who may have been adversely affected.

*Duffy v. Butte Teachers' Union, No. 332, AFL-CIO*, 541 P.2d 1199 (Mont. 1975) (quoting 15A C.J.S. *Conspiracy* § 1(1–2)). In this case, the object of the alleged

conspiracy (sale of Landtech Ltd.) was lawful, and the means used to attain that object (transfer of the company assets to Landtech LLC) were lawful. The transfer of assets may indeed have been done with a malicious motive, as the Plaintiff asserts, but an allegation or proof of malice is not enough to transform a legal transfer of assets into an unlawful conspiracy.

In Montana, "the period prescribed for the commencement of an action upon a liability not founded upon an instrument in writing is within 3 years." Mont. Code Ann. § 27-2-204. The misrepresentations and transfer of assets that form the basis of the Plaintiff's civil conspiracy complaint took place in 2004 and 2005. The statute of limitations ran sometime in 2007 or 2008. All Defendants are entitled to judgment as a matter of law and their Motions for Summary Judgment on the civil conspiracy claim are granted.

**IV.    Plaintiff's constructive fraud claim is barred by the statute of limitations.**

The Plaintiff's fourth and final claim is for constructive fraud. Plaintiff argues that Christensen and the Landtech companies had a duty to disclose to the Lence Family Trust all material information about the sale of Landtech Ltd., that Christensen and the Landtech companies breached that duty by misrepresenting certain material facts, and that the Lence Family Trust suffered damages as a proximate result of the Defendants' breach of their duty. (Doc. 5 at 5–6.)

18

> Constructive fraud consists of: (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28–2–406. In a recent case, this Court held that "[c]onstructive fraud is essentially actual fraud without the element of intent and has similar elements as negligent misrepresentation." *Hayes v. AMCO Ins. Co.*, 2012 WL 5354553, at *4 (D. Mont. Oct. 29, 2012). Fraud can be actual or constructive, Mont. Code Ann. § 28–2–404, but both kinds are subject to a two year statute of limitations, Mont. Code Ann. § 27–2–203. The statute of limitations that bars the Plaintiff's fraud claim also bars the Plaintiff's constructive fraud claim. As a result, Defendants are entitled to judgment as a matter of law and the Court grants their Motions for Summary Judgment on the constructive fraud claim.

### CONCLUSION

Defendants are entitled to judgment as a matter of law on all counts of the Complaint for the reasons set forth above.

Therefore, IT IS ORDERED that defense motions (docs. 22, 34) are GRANTED. Summary judgment shall be entered in favor of each Defendant and against Plaintiff's claims.

The Clerk is directed to enter judgment in accordance with this order in favor of Defendants and against Plaintiff on all claims and to close the file.

Dated this 20 day of August, 2013.

Donald W. Molloy, District Judge
United States District Court