FILED

FEB 2 6 2016

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LENCE FAMILY TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>ELMER C. CHRISTENSEN and<br>LANDTECH ENTERPRISES LTD, CO.,<br><br>Defendant. | CV 12–171–M–DWM<br><br>ORDER |

In 2012, Plaintiff Lence Family Trust ("the Trust") sued Defendants Elmer and Joanne Christensen, Landtech Enterprises Ltd., Co., Landtech Enterprises, LLC, and Landtech Corporation, alleging breach of contract, fraud, civil conspiracy, and constructive fraud arising out of the sale of Landtech Ltd., Co. to Landtech Enterprises, LLC. (Doc. 1.) On August 20, 2013, summary judgment was granted in favor of the defendants as to all of the Trust's claims, (Doc. 49); the Trust appealed, (Doc. 51). On November 19, 2015, the Ninth Circuit affirmed a majority of this Court's summary judgment order, remanding for a limited determination of whether the 2005 Release was unconscionable under Montana

law, (Doc. 55),[1] an issue neither raised by the parties nor previously addressed by this Court. The mandate was issued on December 14, 2015. (Doc. 56.) Following remand, the parties were afforded a reasonable opportunity to present evidence as to the commercial setting, purpose, and effect of the 2005 Release through simultaneous briefing, (Docs. 60, 61),[2] and a hearing held on February 23, 2016, (Minute Entry, Doc. 63). *See* Mont. Code Ann. § 30-2-302(2). For the reasons stated herein, the 2005 Release is not unconscionable.

## FACTUAL BACKGROUND

Landtech Corporation ("Landtech Corp."), incorporated in Montana in 1980, was involved in oil and gas field services and salt water disposal. (Doc. 24-1 at 2.) From 1983 until 2005, the President of Landtech Corp. was Elmer C. Christensen. (*Id.* at 2–3.) From 1981 until August of 2005, John Lence was the attorney for Landtech Corp. and had an equity interest of between 25% and 50%. (Doc. 32-2 at 2; Doc. 32-4 at 2.) Christensen and Landtech Corp. paid Lence a $2,500 monthly retainer, later raised to $5,000, for his legal services. (Doc. 32-4 at 2.) Lence is the senior trustee of the Trust. (*Id.* at 1.) Landtech Corp. was

---

[1] In its remand order, the Ninth Circuit indicated that the record "construed in the light most favorable to the Trust, suggests the totality of the circumstances surrounding the 2005 Release may support a finding of unconscionability." (Doc. 55 at ¶ 3.)

[2] Per the Ninth Circuit's remand order, the only remaining defendants are Elmer C. Christensen and Landtech Enterprises Ltd., Co.

involuntarily dissolved by the Montana Secretary of State on December 4, 2006. (Doc. 24-1 at 3.) Landtech Enterprises Ltd. Co. ("Landtech Ltd.") was a limited liability company incorporated in Montana on September 21, 1998. (*Id.*) The initial members of Landtech Ltd. were Christensen and Gary L. Wygal, each with a 50% capital percentage and a 50% voting percentage. (*Id.*) From 1999–2006, both Christensen and his wife were individual members of Landtech Ltd. (*Id.* at 4.) On December 4, 2007, Landtech Ltd. was involuntarily dissolved by the Montana Secretary of State.[3] (*Id.*)

On December 31, 2004, Landtech Ltd.'s assets were sold to a North Dakota company. (Doc. 36 at 2.) On June 21, 2005, this new entity organized as a single member limited liability company, Landtech Enterprises, LLC ("Landtech LLC"). (*Id.*) Company assets were transferred between Landtech Ltd. and Landtech LLC from December 31, 2004, to July 27, 2005. (Doc. 24 at 5.) According to the Trust, the sale totaled $3,600,000 and resulted in a net profit for Landtech Ltd. of over $2,500,000. (Doc. 32 at 5.) Landtech LLC is owned by Badlands Power Fuels, of which Christensen has never had an ownership interest. (Doc. 36 at 4.)

This case stems from an Acknowledgment and Assignment signed by

---

[3] It is not clear from the record why Landtech Corp. and Landtech Ltd. were involuntarily dissolved.

Landtech Ltd., the Trust, and Lence's attorney, James Bartlett, on March 8, 2004. (Doc. 24 at 5.) The parties agreed that if Landtech Ltd. or its assets were sold, the net proceeds would be shared equally: 50% to the Christensens and 50% to the Trust. (*Id.*) Over the course of correspondence, Christensen represented to Lence that Christensen was in very poor health, that he was unable to manage the company, and that the company would have to be sold for far less than it was worth. (Doc. 5 at 3.) The company sold in December 2004 to Landtech LLC; the Trust was not notified of the sale or given its 50% share. (Doc. 33 at 6.) On August 11, 2005, Gary Jackson, a lawyer representing Landtech Ltd., sent a letter to Lence and Bartlett offering $100,000 as consideration for and in full satisfaction of the Acknowledgment and Assignment. (Doc. 24 at 6.) Also included was a release of the Christensens and Landtech Ltd. for all past and future claims, including claims arising out of the Acknowledgment and Assignment. (Doc. 24-15 at 1.) Bartlett answered Jackson four days later, asking for copies of the closing documents so that Lence could make an informed decision on the $100,000 offer. (Doc. 24 at 6.) Two days later, Jackson told Bartlett on the phone that Lence did not own an interest in Landtech Ltd. and, as a result, he would not receive copies of the closing documents. (*Id.*) Lence signed the Release of All Claims ("the 2005 Release") that same day. (*Id.* at 7.) On

August 22, 2005, Bartlett sent Jackson the 2005 Release along with a letter explaining why Lence signed it: he was in dire financial straits and needed the money for his family and attorney. (*Id.*) On August 25, 2005, Jackson sent Bartlett a check for $100,000. The check was deposited, and the amount was never returned to Christensen. (*Id.* at 10.) At the time the 2005 Release was signed, Lence was in federal prison.[4] (Doc. 61-1 at ¶ 6.)

Janet Hagel is Lence's secretary and has had Lence's general power of attorney since April 7, 2004. (*Id.* at 6.) On September 9, 2005, Hagel signed a Notice of Rescission on behalf of Lence and the Trust. (*Id.* at 11.) The Notice stated that the Trust rescinded the 2005 Release and requested that Christensen make a reasonable offer to avoid a lawsuit. (*Id.*) Christensen maintained that he "did not owe [Lence] any money." (*Id.* at 7.)

## ANALYSIS

### I. Unconscionability as an equitable doctrine

During the hearing on the unconscionability issue, the parties argued under a summary judgment framework; those arguments miss the mark. Because unconscionability is an equitable doctrine, *Kelly v. Widner*, 771 P.2d 142, 145

---

[4] In June 2002, Lence was convicted of fourteen counts of bank fraud and one count of conspiracy to commit bank fraud and ultimately sentenced to 33 months in prison. *United States v. Lence*, 466 F.3d 721 (9th Cir. 2006).

(Mont. 1989), there is no right to a jury trial on this issue, *City of Great Falls v. Forbes*, 247 P.3d 1086, 1088 (Mont. 2011).[5] Rather, having given the parties "a reasonable opportunity to present evidence as to [the] commercial setting, purpose and effect" of the 2005 Release, the determination of its conscionability is an equitable question for the Court to decide. § 30-2-302; *see also* U.C.C. § 2-302, cmt. 3 ("The present section is addressed to the court, and the decision to be made by it. The commercial evidence referred to in subsection (2) is for the court's consideration, not the jury's."). The parties' briefs are construed as cross-motions for a declaration as to the unconscionability of the 2005 Release under § 30-2-302.[6]

## II. Determining unconscionability

"Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Fisher ex rel. McCartney v. St. Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 872

---

[5] Even if a jury trial is appropriate to address issues common to both legal and equitable claims, "[f]actual issues related solely to equitable claims may be decided by the District Court." *St. ex rel. Farm Credit Bank of Spokane v. Dist. Ct. of Third Jud. Dist. of St. in & for Cnty. of Powell*, 881 P.2d 594, 611 (Mont. 1994).

[6] Despite repeated inquiries by the Court during the remand hearing as to whether this is a question for a jury, the parties insisted that it was appropriate for disposition by the Court.

(Mont. 2013); *see also Arrowhead Sch. Dist. No. 75, Park Cnty. v. Klyap*, 79 P.3d 250, 263 (Mont. 2003) (emphasizing a lack of meaningful choice and reasonable expectations of parties). "It is the burden of the party seeking to void a [contract] to raise facts sufficient to demonstrate the [contract] is so one-sided to be unconscionable." *Fisher*, 305 P.3d at 872 (internal quotation marks omitted). "Under unconscionability, a court will only strike a contract [] if the bargaining process itself had some inherent unfairness that actually prevented the contract from being freely negotiated and thus defeated the principle of freedom of contract." *Arrowhead*, 79 P.3d at 263. "The underlying principle of conscionability is that of doing justice under the circumstances of each case." *Kelly*, 771 P.2d at 145. While there is no single factor that is determinative, the following may be indicative: inadequacy of consideration, "unequal bargaining power, lack of meaningful choice, oppression, and exploitation of the weaker party's vulnerability or lack of sophistication." *Id.*

In this case, the parties present entirely different interpretations of the snapshot of the facts existing at the time the 2005 Release was signed. The Trust sees an uninformed, unrepresented, incarcerated, downtrodden and financially-distressed lawyer given a low-ball, "take it or leave it" offer. The defendants see a sophisticated businessman and attorney who, with the help of counsel, knowingly

accepted a generous offer for an amount that he was not due under the circumstances. When brought into focus, the facts reveal what was likely a bad deal, but not an unconscionable one.

One of the primary considerations in this case are Lence's personal circumstances. In *Kelly*, the Montana Supreme Court relied heavily on the personal background and financial situation of the plaintiff in its consideration of the unconscionability question. There a woman was injured in an automobile accident and signed a release with the at-fault driver's insurance company in exchange for $8,900. 771 P.2d at 143. The plaintiff was 45, lived alone in a cabin with no car, had a ninth grade education, and, at times relevant to the litigation, lived on only $10 a month and food stamps. *Id.* The Trust argues that Lence's situation at the time of the 2005 Release is comparable to that of the plaintiff in *Kelly* in that they both had "nothing." While they both suffered financial difficulties, the similarities between the cases end there.

Lence is a sophisticated businessman. He is a senior trustee for the Trust, (Doc. 32-4 at 1), an attorney and certified public accountant, (Doc. 24 at ¶ 14), and was involved in extensive and complicated business dealings for Landtech Corp., (*id.* at ¶¶ 3-7), including performance of all its legal services, (Hagel Aff., Doc. 32-2 at ¶¶ 3, 7). That said, Lence was incarcerated at the time, arguably limiting

his ability to communicate and interact with the parties in this case. Such communication occurred, however, through Jim Bartlett. The Trust insists that Bartlett is not its nor Lence's attorney; rather, Bartlett is the attorney for Landtech. (Doc. 61-1 at ¶ 6.) While the Trust may refuse to label Bartlett its attorney, Bartlett undisputedly acted for Lence[7] and the Trust and was authorized to make representations on their behalf. (*See* Doc. 24, at ¶¶ 20-34.) Additionally, the 2005 Release acknowledges that the Trust "had an opportunity to obtain advice from counsel" before signing, the $100,000 sent under the terms of the 2005 Release was made payable to Bartlett's trust account, and the Trust's communications with Jackson were on Bartlett's legal letterhead. (*Id.* at ¶¶ 28, 34; *see e.g.* Doc. 32-1 at 23.) While Lence's incarceration complicated his ability to communicate and interact with the relevant parties and he suffered from certain financial difficulties, those realities did not detract from his years of business experience, his law degree, or the assistance, however undefined, he received from counsel.

Another consideration in this case is the alleged "take it or leave it" nature of the 2005 Release. The Trust relies heavily on the *Arrowhead* case to say that the it is unconscionable because it was a contract of adhesion. (*See* Doc. 32-1 at

---

[7] Bartlett was also one of Lence's criminal attorneys. *See United States v. Lence*, 466 F.3d 721, 722 (9th Cir. 2006).

11 (letter from Gary Jackson, Landtech Ltd.'s attorney, stating that if the 2005 Release was not signed, "[Christensen] will pay nothing.").) That reliance is misplaced. Pursuant to *Arrowhead*, a contract of adhesion is not per se unconscionable. In *Arrowhead*, the Montana Supreme Court held that even though the relevant employment contract was a contract of adhesion because it denied any meaningful choice on the part of the teacher to negotiate its terms, the liquidated damages clause at issue was not unconscionable. 79 P.3d at 265-67. As a result, even assuming the 2005 Release was a "take it or leave it" offer as argued by the Trust, that alone is insufficient for a finding of unconscionability. Moreover, the 2005 Release did not foreclose the Trust's meaningful choice. The Trust's bargaining position was fundamentally different than that presented in *Arrowhead*, where the Court noted that the school district could have simply hired a different teacher if Klyap refused to sign the contract. *See* 79 P.3d at 265. Here, the Trust was a necessary party to the 2005 Release.

Unlike the commutable teacher in *Arrowhead* and the uneducated plaintiff in *Kelly*, the Trust had the bargaining position necessary to give it meaningful options and the business experience to weigh them.

The final concern outlined by the parties is the adequacy of the consideration. In *Kelly*, the Montana Supreme Court emphasized the release's

failure to account for the plaintiff's future medicals, noting "there was substantial uncertainty as to the extent of the injury . . . and the future prognosis." 771 P.2d at 145. The Trust insists that Lence's lack of knowledge regarding the value of the Landtech sale is comparable. The record indicates, however, that the higher sale value was not unexpected. *See Arrowhead*, 79 P.3d at 267 (focusing on the reasonable expectations of the parties). After signing the 2005 Release, Lence immediately attempted to rescind and threatened to bring a lawsuit, demanding the one-half share provided for in the Acknowledgment and Assignment. (*See* Notice of Recission dated September 9, 2005, Doc. 24-19.) While Bartlett's request for closing documentation had been refused, (Doc. 24 at ¶ 22), Lence could have filed a civil action to seek damages under the Acknowledge and Assignment prior to signing the 2005 Release and sought the documents through discovery. He chose not to do so. Instead, he sought the additional funds only after he had the $100,000. (*See* Doc. 32-3 at ¶ 12 ("[Lence] said with the misrepresentations by Elmer the release was null and void and he would have to worry about it another day.").) The Trust also never returned the $100,000 despite its Notice of Recission. (Doc. 24 at ¶ 34); *see* Mont. Code Ann. § 28-2-1713 (requiring the rescinding party to restore everything of value to the other party).

While Lence now argues that the $100,000 is a pittance compared to what he was owed, that assumption is far from certain. Christensen did not believe he owed the Trust anything, (Doc. 32-1 at 11 ("[Christensen] is of the opinion that he owes [Lence], the [] Trust, or [Bartlett] absolutely nothing.")), and it is undisputed that neither the Trust nor Lence had a membership interest in Landtech Ltd., (Stip. Facts, Doc. 47 at ¶ 4(d); *see also* Doc. 32-1 at 13 (Bartlett stating that "Lence has authorized me to represent that he never obtained a membership interest in Landtech [] Ltd.")). Right or wrong, the resolution of the Trust's interest in the sale proceeds was bound to take time, and a court could have found that the Trust was entitled to nothing. The $100,000 provided the added value of a concrete and immediate payout. In light of Lence's financial needs, $100,000 in hand was more useful than an uncertain $2,000,000 in the future. (*See* Doc. 32-1 at 9 ("[Lence] has obligations to make and time is of the essence.").)

Ultimately, this case involves a business deal between equals, not a personal injury action between an inexperienced plaintiff and an insurance company. Even if Lence lacked a meaningful choice or the 2005 Release unreasonably favored Christensen, Lence knowingly agreed to its terms and the amount forsaken was within Lence's reasonable expectations as a businessman and attorney familiar with the operations of the company. Put simply, there was truly no one more

qualified to make the decision that was made. While the Trust now insists that the 2005 Release's fundamental unfairness was overwhelmingly apparent at the time of formation, that argument cuts both ways as it defies logic that a party can knowingly enter into an unconscionable agreement and then sue seeking safe harbor to escape the storm it created. The record shows Lence knowingly signed off on the 2005 Release and that he had plans to get the money and then rescind because it was a "shame on you Elmer" deal. (*See* Doc. 24-19 at 3.) He knew it was a bad bargain but chose to go along anyway. He is in no position to argue he knowingly entered an unconscionable bargain. Unlike the plaintiff in *Kelly*, Lence signed the 2005 Release with knowledge of both its benefits and consequences. The Trust has not met its burden of showing that the 2005 Release was unconscionable.

## Conclusion

Having considered the evidence presented by the parties as to the commercial setting, purpose, and effect of the 2005 Release and in accordance with the Ninth Circuit's remand order and Montana Code Annotated § 30-2-302(2), the Court finds that the 2005 Release was not unconscionable and it is enforceable.

Having previously determined that the 2005 Release is a valid accord and satisfaction, (Doc. 49), and there being no further issues for determination in this case, IT IS ORDERED the Clerk of Court is directed to enter judgment in favor of the defendants and close the case.

Dated this 26th day of February, 2016.

Donald W. Molloy, District Judge
United States District Court